Good morning, your honors. My name is Edward Weiss, and I am the attorney for the petitioner Adriana Yadira Cueva Nunez. Petitioners seeking the review of the decision of the BIA dated April 29, 2021. At the outset, your honor, we have here a case of a young 18-year-old Mexican girl who was kidnapped and repeatedly raped by two members of the CDG, then thrown from a vehicle. This young girl, despite knowing the consequences, had the courage to report the incident to the police, and then the courage, despite threats and attempts on her life and the lives of her family, to seek justice through the legal system. As a result, her life and those of her family have been placed in jeopardy from that moment forward, from the CDG and various authorities in Mexico, who at a minimum were unwilling and unable to protect her, and based on the record, even complicit in the persecution. At the outset, your honor, we believe that the decision of the BIA of April 2021, affirming the denial in reliance in part on matter of AB1 and AB2, must be reversed in light of the recent decision of the Attorney General in June 2021, which vacated these two decisions, which were relied on by the immigration judge and the BIA. In the recent decision by the Attorney General in vacating that decision, he held that the victims of private criminal activity will be able to qualify for asylum, and those who receive gang violence perpetrated by non-government actors, which has changed the whole situation of the membership in a particular social group and the nexus. Therefore, the petitioners whose hearing occurred under the now vacated requirements was precluded from presenting her claims fully since the persecution she received was perpetrated by private actors, the gang members. And for this reason, at a minimum, we believe the case should be remanded for a new hearing to allow her to present her claims under the revised rules for membership in a particular social group. Counsel, could I interrupt here? Isn't opposing counsel going to argue, and we're very familiar with AB1 and AB2 in that series of cases, so I appreciate you're calling that to our attention, but isn't opposing counsel going to argue that in this case the BIA found that she failed to articulate a PSG at all? That may be the case, Your Honor, but we disagree that she did fail to show a PSG. Right, and so are you looking at her, as opposed to, I looked at this record pretty hard and at the transcript because she seems to be relating the very same story. I'm looking maybe for the benefit of opposing counsel so you can both respond to this. I'm looking at ER 311 and 312 where she alleges that she was sexually assaulted by the cartel and fears persecution because she thinks she's going to be, you know, in retaliation for that. So it seems to me the first problem is that the IJ looked to and understood that she was claiming that her acts taken in retribution. Do you agree with that reading of the record? Yes. Yes, Your Honor. In other words, we believe that the immigration judge incorrectly viewed that she was claiming persecution because she was raped. We're not saying that. We're saying she is fearing persecution because she reported the rape and that that is what has been the cause of the persecution by the cartel from that moment that she reported the rape to the police and all the actions she tried to take subsequently and all the persecution she received as a result of that. Are you familiar with the recent case from the HLSA or are you relying on Enrique's revisit? What's your authority for this, for your claim? I'm sorry, Your Honor. I asked, I didn't ask a very good question, but I'm trying to ask whether you're familiar with this case HLSA. No, Your Honor. I apologize. You don't owe me an apology. That's fine. It's a pretty recent case. You're relying, I take it, on Enrique's revisit? Yes, Your Honor. All right. I didn't mean to sidetrack you from your argument. Please go right ahead. Yes. Secondly, Your Honor, and just as importantly, we believe that on behalf of the petitioner, we vigorously challenged the adverse credibility finding of the immigration judge and the actions of the immigration judge in clearly misstating the testimony of petitioner and the extensive documentation at the hearing. We also challenged the finding of the BIA that even if this adverse credibility was clearly incorrect, it did not negate the fairness of the hearing. This court in numerous cases over the years has clearly stated that if the adverse credibility determination of the immigration judge is incorrect, that at a minimum, the petitioner should be allowed a new hearing. Is it your read that the BIA relied on adverse credibility? Yes, Your Honor. Well, it stated that even if adverse credibility was found, that it didn't affect their decision. It stated that in reviewing the materials, that it could see that the adverse credibility determination of the judge was incorrect. It was not relying on adverse credibility in their decision, where our argument is, if the adverse credibility determination is incorrect, that's it. So it's your view that maybe I shouldn't have interrupted because maybe you're just about to say that it's really your view that if there's an adverse credibility finding that's incorrect, even if the board says we're not relying on that at all, and like assuming all the testimony to be credible, there's some other reason that the claim to the fundamental fairness of the hearing, that everything else that is determined in that hearing is affected by the fact that this adverse credibility had an effect on the decision. It's impossible not to if that's incorrect. Especially when it dealt with a key issue, the adverse credibility was whether or not the rape ever even occurred, despite the fact that there were numerous documents in the record showing the rape had occurred. Okay, so I'm going to just ask you to assume that I disagree with that, and that if there's, if the adverse credibility determination was incorrect and inadequately supported but set aside, and the BIA had other grounds that it relied upon, that my assumption is that I'm going to ask you to just accept is that there wouldn't necessarily need to be a remand. What the BIA did rely on, I think, is that, right, it's understanding that she had not articulated a PSG, we've talked about that, that there wasn't a nexus between the persecution and protected grounds, and I don't think you've spoken to that, and then there's no likelihood of future torture as to the torture claim. But do you want to speak quickly to nexus? Yes, we believe that clearly we showed through the witness statements and her testimony that she received the persecution from the CDG for years, wherever she went, because she had reported the rape to the police and pursued it, and that as she testifies in terms of the government unwillingness and complicity, that the only people who knew of her phone numbers because they were keeping tabs on her for the trial was the government, and yet the CDG was able to keep finding her from wherever she went, and it was, it seems logical, the only way they would have found out about it was through the government, and that even some of the witness statements include people from the government coming to her house and telling her, reported the CDG, you better get out of here, you're going to be killed. We also believe, Your Honor, even though I don't have much time left, that she, by reporting the rape, also showed what we consider to be an imputed political opinion, the right not to want to be raped, which this Court has recognized as a right. I reserve my time. Okay, that's what I was just going to ask you. Let's hear from opposing counsel, please. Good morning, Your Honors, and may it please the Court, my name is Anthony Nardi on behalf of the Respondent, Attorney General Garland. Your Honors, Respondent has three points today. First, with respect to asylum and withholding, Petitioner failed to demonstrate a nexus between any potential protected ground and the harm she suffered and fears, and that finding is dispositive of both her asylum and withholding claims. Second, with respect to cat protection, the agency properly found that the Mexican government would not acquiesce to her torture upon her removal, and therefore, her cat claim must fail. And finally, with respect to Petitioner's various due process arguments, Petitioner has failed to demonstrate that she suffered any substantial prejudice on account of any of those grounds, and therefore, they must also fail, and in totality, the Court should deny the petition. And with respect to the asylum and withholding, going directly to that nexus element, based on Petitioner's own testimony, at page 139 of the record, when she was directly asked about the motives of her persecutors, she stated that the men who targeted her, they targeted her because they wanted to rape her, and while it is a tragic and sympathetic harm, it is also the type of generalized violence that this Court has repeatedly held does not constitute a nexus. But that was true. Go right ahead, we're going to say the same thing. That may have been true of the initial rape, but she also testified to, you know, her car being vandalized with a note left on it referring to the earlier incident, you know, the policeman calling up her father with a threat, the, you know, people who tried to run her over and said, you know, that's what you get for whistleblowing, and so none of that was because anyone wanted to commit rape. That was all in retaliation for the earlier reporting, wasn't it? Correct, Your Honor, but as this Court said in Lazama Rivera and Melina Morales, those types of, you know, personal retribution or acts of vendetta are not the type of harms that this Court has stated constitute a nexus. Counsel, this, no. What about Enriquez Rivas? We've absolutely recognized in case law that when people testify in court against a gang, that there is grounds, and we've, and the BIA has an even more recent opinion that I'm sure you're aware of, regard and recognizing that when there is cooperation with the government and then retribution for that, that that is cognizable. So I'm very concerned about the position you're taking today. Your Honor, I would simply state that the position of the government is that the record does not compel the conclusion that the gangs and the government were acting in concert together and that the harms that were resulted after, as the Board noted, it's at page 80 of the transcript, she stated she was, began being persecuted directly after the rape occurred, but she also stated that she did not actively testify in these, about, in a case about these issues for two months later. And so therefore, it's unclear whether or not the persecution was on account of that whistleblowing or if it was just a continued personal vendetta in the first instance. However, regardless of that, Petitioner would also, or sorry, Respondent would also state that Petitioner failed to demonstrate and allege, under matter of WIC, a valid protected ground upon which relief can be granted in the first place. As matter of WIC requires, it states that the applicant's burden to establish her claim, in particular when they are, when she is establishing based off a particular social group, they have to clearly delineate that particular social group before the agency, for the IJ, in the first instance. And here, the Petitioner... Wait a minute. Let's just be clear. Forgive me for interrupting, but now you're backtracking, and I just want to, that's okay, but I, you said that you were going to make three points, and the first was nexus. You didn't mention what the BIA relied upon, which I raise with opposing counsel. BIA relied upon the fact that she had not articulated a PSG in the first place. That was the BIA's read. I just want to be clear. Is that your position as well? Yes, Your Honor. Under matter of WIC, she did not articulate before the IJ a PSG, and therefore, she has not met her burden to establish a protected ground upon which asylum or withholding relief can be granted. Okay, so let's look at ER 311 and 312. On 311, she says, I was sexually assaulted by members of the criminal cartel, and she named the cartel in Mexico. Because I reported the incident and sought to prosecute those responsible, myself and my members of family have been targeted by the cartel for retribution. On 312, she says, I believe I would be tortured and cut into pieces by the cartel as revenge for seeking to prosecute members of this organization for sexually assaulting me. So I read that to be, you know, blunt, as I want to do, clear as a bell, and I think what you're telling me, and I might be missing your point, is that, what did she not do? Did she not say PSG, and is it your read of the law that she's required to, you know, designate it as such? Yes, Your Honor, a position, response position would be that under matter of WIC, the petitioner has the obligation before the IJ to clearly delineate the exact particular social group with which they are continuing forward under. How is this one imprecise, counsel? What's missing? That she was sexually assaulted, that she was, suffered retribution in the ways that Judge Miller mentioned in retaliation for cooperating with the police in testifying? Your Honor, I think the issue is with the clearly clear delineation before the IJ and stating that what the actual PSG is, and I would point the court to its decision in Acosta Ruiz, where again, there were, in that case, the petitioner had stated that, had references to the fact that he was an honest police officer before the IJ, but went on appeal, having not actually said that the PSG I am pursuing is honest police officers, the court there said that that was insufficient to meet the burden of matter WIC to state that he hadn't sufficiently delineated a particular social group. We're familiar with WIC, I just struggled to see how it is in any way comparable to the facts of this case. Are you familiar with HLSA? I am not, Your Honor. Can I ask you about what the board had to say on this issue? Because there's the, I'm looking at AR3, and then the carryover paragraph from 3 to 4 of the record, and if the board had stopped with that paragraph, I would have some sympathy for your point, because there the board says, you know, respondent argues that she bears a political opinion and is a member of several particular social groups. We decline to consider claims advanced for the first time on appeal. So that sounds like they're saying, you know, she didn't articulate this below. Then the very next paragraph, they sort of redundantly say, respondent also argues that the harm she suffered and fears was or would be inflicted on account of her political opinion and membership in a PSG. We discern no clear error in the immigration judge's findings to the contrary. So it seems like they are saying that the immigration judge made some findings about the PSG, which would seem to only be possible if they had been presented below, and then, you know, whatever you think of that, the rest of that paragraph goes on to address them on the merits. So what would be the basis for us to say that it hadn't, they hadn't properly been raised below when the board seems to have reviewed them on the merits? Your Honor, I would point the court to pages 50 and 51 and 52 of the record where the IJ goes to that analysis. I think the IJ, proper reading of that, the IJ's decision is that they were first making essentially alternative findings that even if there was a properly presented PSG, there was still no nexus. And so they were simply, you know, doing their due diligence and going through all of the elements, but they still did note at the bottom of page 51 that the court had asked for briefs and motions relating to the particular PSG that was going to be asserted and that that had not been met. However, they continued on to make alternative findings. Okay, but given that they did continue on and the board obviously continued on, you know, we have a lot of case law that says that when the board considers the issue on the merits, that's sufficient to exhaust it and we can review whether what the board said on the merits was right or wrong. So isn't it appropriate for us to do that here? Your Honor, if you find that the petitioner did sufficiently articulate a particular social group, then yes, it would be appropriate for you to review that. Where do we look? We look at our application. We look at the hearing transcript. You've read the hearing transcript, certainly. I'm sure we all have. Is there any other place we should be looking? Where else would she raise it? Where else would she raise it? I think the petitioner also had two opportunities. The IJ gave the opportunity to file those legal briefs. However, the petitioner failed to articulate a PSG at either of those stages. Do you find any ambiguity in her testimony at the hearing? With regard to what, Your Honor? About what happened to her? Yes, Your Honor. I think there is some ambiguity. Really? I really am struggling, counsel. And I'm sure this argument is one for which you've carefully prepared. So what is it that she's missing? Ambiguity. Sorry, Your Honor. Missing with regards to what? I think there's ambiguity about— Articulating a valid PSG under our case law. Enriquez Rivas. Your Honor, I think specifically what the IJ found was that she had not specifically stated what the exact PSG is. And I think the IJ's attempt to go through and delineate whether was it a family-based PSG? Was she actually articulating an imputed political opinion? I think that gives rise to the ambiguity of it was unclear of what she was stating. You've answered my question, and I appreciate your patience with my question. Thank you. Judge Teshima, would you like to get in a word edgewise now? Judge Miller? All right. Counsel, do you want to wrap up? And for those reasons, Your Honors, the respondent believes that the court should deny the petitioner's review. Thank you, Your Honors. Thank you. Opposing counsel, you have a minute left. Yes, Your Honor. We believe, as articulated today, that the respondent—the petitioner's testimony in court, consistent with what she was saying when she literally crossed the border and was determined by an asylum officer to have a credible fear, everything remained consistent, including the testimony and witness statements from 30-plus people confirming the problem she was having, specifically because she reported the rape to the police and sought justice. We believe there's no her social group and the harm she suffered as a result. Thank you, Your Honor. Thank you both. And thank you for your careful attention to this case. We'll take it under advisement and move on to the final case on the oral argument calendar.
judges: TASHIMA, CHRISTEN, MILLER